UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHE STERCKX, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LUCKIN COFFEE INC., JENNY ZHIYA QIAN, REINOUT HENDRIK SCHAKEL, CHARLES ZHENGYAO LU, JIAN LIU, JINYI GUO, HUI LI, ERHAI LIU, CREDIT SUISSE SECURITIES (USA) LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, KEYBANC CAPITAL MARKETS INC., and NEEDHAM & COMPANY, LLC,<br><br>Defendants. | Case No. 1:20-cv-01677-KAM-VMS<br><br>CLASS ACTION |

*Caption continued on next page.*

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SJUNDE AP-FONDEN AND LOUISIANA SHERIFFS' PENSION & RELIEF FUND FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS**

| | |
|---|---|
| VIJAYA GOPU and NIRMALA GOPU, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LUCKIN COFFEE INC., CHARLES ZHENGYAO LU, JENNY ZHIYA QIAN, JIAN LIU, REINOUT HENDRIK SCHAKEL, HUI LI, JINYI GUO, ERHAI LIU, SEAN SHAO, THOMAS P. MEIER, NEEDHAM & COMPANY, LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORP. HONG KONG SECURITIES LTD., HAITONG INT'L SECURITIES CO. LTD., CREDIT SUISSE SECURITIES (USA) LLC, and KEYBANC CAPITAL MARKETS INC.,<br><br>Defendants. | Case No. 1:20-cv-1747-EK-SJB<br><br><u>CLASS ACTION</u> |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

SUMMARY OF THE RELATED ACTIONS ................................................................... 3

ARGUMENT ....................................................................................................................... 5

    A.    AP7 and Louisiana Sheriffs Are the Most Adequate Plaintiff ........................... 5

        1.    AP7 and Louisiana Sheriffs' Motion Is Timely ......................................... 5

        2.    AP7 and Louisiana Sheriffs Have the Largest Financial Interest in the Relief Sought by the Class .................................................................. 6

        3.    AP7 and Louisiana Sheriffs Satisfy the Requirements of Rule 23 .......... 7

        4.    AP7 and Louisiana Sheriffs are Precisely The Type of Lead Plaintiff Envisioned By The PSLRA ........................................................ 8

    B.    AP7 and Louisiana Sheriffs Selected Well-Qualified Lead Counsel to Represent the Class ............................................................................................ 11

    C.    The Actions Should Be Consolidated ............................................................... 13

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009)...................................................................................11

*Ford v. Voxx Int'l Corp.*,
    2015 WL 4393798 (E.D.N.Y. July 16, 2015).............................................................8, 11

*Hom v. Vale, S.A.*,
    2016 WL 880201 (S.D.N.Y. Mar. 7, 2016).............................................................1, 7, 8

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007).......................................................................................1

*Mustafin v. GreenSky, Inc.*,
    2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019)...............................................................11

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d. 286 (E.D.N.Y.1998)...............................................................................14

*In re Synergy Pharm. Inc. Sec. Litig.*,
    2019 WL 6150713 (E.D.N.Y. Nov. 20, 2019)..............................................................14

**STATUTES**

15 U.S.C. § 78u-4(a)(3) ............................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4).......................................................................................................7

Fed. R. Civ. P. 42(a) .........................................................................................................13

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995).........8

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 (1995) .........................8

Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") respectfully submit this memorandum of law in support of their motion, pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order: (1) appointing AP7 and Louisiana Sheriffs as Lead Plaintiff; (2) approving their selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class; (3) consolidation of the above-captioned securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned actions and at least two other related securities class actions filed in the Southern District of New York (the "Related Actions") allege that Luckin Coffee Inc. ("Luckin Coffee" or the "Company") and other defendants (collectively, "Defendants") violated the federal securities laws during the period from May 17, 2019 through April 6, 2020, inclusive.[1] Specifically, the Related Actions allege that Luckin Coffee falsely represented the Company's financial condition by fabricating over $300 million in sales starting in the second quarter of 2019

---

[1] In addition to the above-captioned actions, the Related Actions include *Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293 (S.D.N.Y.) ("*Cohen*"), and *Shek v. Luckin Coffee Inc.*, No. 1:20-cv-02977 (S.D.N.Y.) ("*Shek*"), two securities class actions alleging substantially identical claims that were filed in the United States District Court for the Southern District of New York ("S.D.N.Y."). AP7 and Louisiana Sheriffs are simultaneously moving for consolidation and appointment as Lead Plaintiff in the Related Actions pending in the S.D.N.Y. For purposes of this motion, AP7 and Louisiana Sheriffs have used the longest-pleaded class period in the Related Actions (the "Class Period") to calculate their financial interest, and refer to the broadest set of claims asserted and defendants named in the Related Actions. *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007); *Hom v. Vale, S.A.*, 2016 WL 880201, at *5 (S.D.N.Y. Mar. 7, 2016). Because the relevant provisions of the PSLRA in the Exchange Act and Securities Act are identical, this memorandum solely cites the Exchange Act.

and continuing through the end of the year. Luckin Coffee investors—including AP7 and Louisiana Sheriffs—incurred significant losses when the truth about the Company's financial condition was revealed through a series of disclosures, culminating in Luckin Coffee's admission that its Chief Operating Officer and his direct reports falsified nearly half of the Company's reported revenues. In response to these disclosures, Luckin Coffee American Depositary Shares ("ADSs") lost over 80% of their value, and their trading on the NASDAQ was halted on April 6, 2020, and has yet to resume.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, AP7 and Louisiana Sheriffs are the "most adequate plaintiff" by virtue of, among other things, the $6.9 million in losses that they incurred on their purchases of 187,500 Luckin Coffee ADSs during the Class Period.[2]

In addition to asserting the largest financial interest, AP7 and Louisiana Sheriffs readily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the Class and they will fairly and adequately represent the Class. AP7 and Louisiana Sheriffs are a paradigmatic Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with a real financial interest in the litigation, and have extensive experience supervising the work

---

[2] AP7 and Louisiana Sheriffs' PSLRA-required Certifications are attached as Exhibit A to the Declaration of Gerald H. Silk in Support of the Motion of AP7 and Louisiana Sheriffs for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel ("Silk Decl."). In addition, charts providing calculations of AP7 and Louisiana Sheriffs' losses are provided as Exhibit B to the Silk Decl. References to "Ex. __" are to the exhibits accompanying the Silk Decl. and all emphasis is added and citations omitted unless noted.

2

of outside counsel in securities litigation—including in groups with other institutional investors. Indeed, in serving as members of lead plaintiff groups, AP7 and Louisiana Sheriffs have recovered well over $1 billion for investors in securities class actions prosecuted in the Second Circuit through their oversight of their proposed Lead Counsel here. Moreover, by working together, AP7 and Louisiana Sheriffs have standing to assert all available securities claims against all culpable parties—demonstrating that they will provide the best possible protection to the Class. AP7 and Louisiana Sheriffs fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and have amply demonstrated their commitment and ability to fulfill those responsibilities here.

Finally, AP7 and Louisiana Sheriffs' adequacy is demonstrated through their selection of Kessler Topaz and Bernstein Litowitz, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, AP7 and Louisiana Sheriffs respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

## SUMMARY OF THE RELATED ACTIONS

Luckin Coffee is a coffee retailer founded in 2017 based in Xiamen, the People's Republic of China. Luckin Coffee owns and operates stores selling food and beverages, as well as a mobile application for food and beverage purchases. The Company conducted an Initial Public Offering ("IPO") of its ADSs on May 17, 2019, and a Secondary Offering ("SO") with a concurrent Convertible Note Offering on January 10, 2020.

The Related Actions allege that, throughout the Class Period, including in connection with the IPO and the SO, Luckin Coffee promoted its technology-driven retail model using "big data analytics, [artificial intelligence], and proprietary technologies" to drive sales of coffee and other

products and develop revenue and expense models that ensure accurate and transparent reporting. Luckin Coffee reported record-setting revenue growth and claimed that its stores were profitable.

In reality, Luckin Coffee's stores were operating at substantial losses, the Company's financial health was in jeopardy, and Luckin Coffee's store sales data were simply fabricated over multiple quarters. As a result of these misrepresentations, Luckin Coffee ADSs traded at artificially inflated prices throughout the Class Period.

The truth about Luckin Coffee was revealed in a series of disclosures. First, on January 31, 2020, Muddy Waters Research published a report stating that Luckin Coffee had fabricated portions of its financial statements beginning in the third quarter of 2019, citing "smoking gun evidence" such as thousands of hours of store video, customer receipts, and monitoring of the Company's mobile application data. On this news, the price of Luckin Coffee ADSs fell from $36.40 per share on January 30, 2020, to $32.49 per share on January 31, 2020. On February 3, 2020, Luckin issued a press release dismissing Muddy Waters's conclusions. The Company "categorically denie[d] all allegations in the [Muddy Waters] Report" and assured investors that the "methodology of the Report is flawed, the evidence is unsubstantiated, and the allegations are unsupported speculations and malicious interpretations of events."

Notwithstanding the aggressive defense of its operations, on April 2, 2020, Luckin Coffee disclosed that an internal investigation had found that over $300 million in reported sales simply did not exist and that Luckin Coffee's Chief Operating Officer Jian Liu and several of his direct reports had fabricated these transactions beginning in the second quarter of 2019. On this news, the price of Luckin Coffee ADSs fell from $26.20 per share on April 1, 2020, to $6.40 per share on April 2, 2020—a decline of over 75%.

4

Finally, on April 6, 2020, Goldman Sachs & Co. LLC announced that an entity controlled by Luckin Coffee's Chairman Charles Zhengyao Lu had defaulted on a $518 million margin loan secured by Luckin Coffee ADSs, which had been pledged as collateral by the Company's founders—Lu and Chief Executive Officer, Jenny Zhiya Qian—for these personal loans. On this news, the price of Luckin Coffee ADSs fell from $5.38 per share on April 3, 2020, to $4.39 per share on April 6, 2020, another 18% decline. Trading of Luckin Coffee ADSs was halted on April 6, 2020, by the NASDAQ, and has yet to resume.

**ARGUMENT**

**A.    AP7 and Louisiana Sheriffs Are the Most Adequate Plaintiff**

AP7 and Louisiana Sheriffs respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes a presumption for selecting a lead plaintiff that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, AP7 and Louisiana Sheriffs believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

**1.    AP7 and Louisiana Sheriffs' Motion Is Timely**

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On February 13, 2020, the first of the Related Actions, *Cohen*, was filed in the United States District Court for the Southern District of New York ("S.D.N.Y."). That same day, counsel for the plaintiff in *Cohen* published a notice on *Globe Newswire* alerting investors to the pendency of the action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is April 13, 2020. *See* Ex. C. On April 2,

2020, the *Sterckx* action was filed in this District, asserting substantially similar claims under the Exchange Act, as well as claims under the Securities Act in connection with misstatements and omissions in the IPO and SO offering materials and expanding the class period to run from May 17, 2019 through April 2, 2020. That same day, counsel for the plaintiff in *Sterckx* published a notice on *Globe Newswire* alerting investors to the pendency of and expanded class period and additional claims asserted in the action, and reiterating the April 13, 2020 deadline to seek Lead Plaintiff appointment. *See* Ex. D. Third, on April 6, 2020, the *Gopu* action was filed in this District, which expanded the class period by four days, to run from May 17, 2019, through April 6, 2020. Notice of this minor class period expansion was provided to investors, which reiterated the April 13, 2020 deadline. *See* Ex. E. AP7 and Louisiana Sheriffs have timely moved for appointment as Lead Plaintiff through the filing of this motion.

### 2. AP7 and Louisiana Sheriffs Have the Largest Financial Interest in the Relief Sought by the Class

AP7 and Louisiana Sheriffs should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u4(a)(3)(B)(iii)(I)(bb). As demonstrated herein, AP7 and Louisiana Sheriffs sustained losses of approximately $6.9 million on their Class Period purchases of approximately 187,500 Luckin Coffee ADSs. *See* Exs. A & B. To the best of AP7 and Louisiana Sheriffs' knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, AP7 and Louisiana Sheriffs have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. AP7 and Louisiana Sheriffs Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, AP7 and Louisiana Sheriffs otherwise satisfy the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only "make a preliminary showing that the typicality and adequacy requirements have been met." *Vale*, 2016 WL 880201, at *6. Here, AP7 and Louisiana Sheriffs unquestionably satisfy both requirements.

AP7 and Louisiana Sheriffs' claims are typical of the claims of other purchasers of Luckin Coffee securities. Typicality is satisfied where the movant's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Id*. Here, AP7 and Louisiana Sheriffs and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical. Like all other Class members, AP7 and Louisiana Sheriffs: (1) purchased Luckin Coffee securities during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were damaged as a result. *See id.* at *6 (typicality satisfied where movant purchased "shares at artificially inflated prices during the class period, and were injured by the false and misleading statements and omissions made by defendants in violation of federal securities laws"). As such, AP7 and Louisiana Sheriffs satisfy the typicality requirement of Rule 23.

AP7 and Louisiana Sheriffs likewise satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the Class's interests to be fairly and adequately represented, the movant must show that: "(1) class counsel is qualified, experienced, and general[ly] able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the

7

outcome of the case to ensure vigorous advocacy." *Vale*, 2016 WL 880201, at *6. AP7 and Louisiana Sheriffs satisfy these elements because their substantial financial stake in the litigation provides AP7 and Louisiana Sheriffs with the ability and incentive to vigorously represent the Class's claims. AP7 and Louisiana Sheriffs' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between AP7 and Louisiana Sheriffs and other Class members.

  **4. AP7 and Louisiana Sheriffs are Precisely The Type of Lead Plaintiff Envisioned By The PSLRA**

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, AP7 and Louisiana Sheriffs are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial interest in the litigation. S. Rep. No. 104-98, at *11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class action will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Ford v. Voxx Int'l Corp.*, 2015 WL 4393798, at *4 (E.D.N.Y. July 16, 2015) (noting congressional and courts' preference for institutional lead plaintiffs).

Based on their past experience successfully supervising their proposed Lead Counsel, AP7 and Louisiana Sheriffs are well-aware of the duties the Lead Plaintiff has to oversee and supervise the litigation separate and apart from counsel, and AP7 and Louisiana Sheriffs have submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties here. *See* Exs. A & C; *see also Voxx Int'l*, 2015 WL 4393798, at *4 (appointing group of

three institutional investors as they were "large and experienced investors with the resources necessary to ensure adequate representation" and "[a]s large institutional investors . . . precisely the type of investors often chosen by courts to serve as lead plaintiffs").

As set forth in their Joint Declaration, AP7 and Louisiana Sheriffs are sophisticated institutional investors that have combined assets under management of approximately $64 billion with extensive experience and success serving as members of Lead Plaintiff groups under the PSLRA. Ex. F ¶¶ 2-5. They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this action. *Id.* ¶¶ 7, 12, 14. Indeed, AP7 and Louisiana Sheriffs' decision to join together to prosecute this action is informed by their experience successfully prosecuting similar securities class actions as co-lead plaintiffs under the PSLRA, including some of the most significant securities class action recoveries in this District. For example, AP7 recovered $150 million for investors when it served as co-lead plaintiff in *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) (Daniels, J.), with Bernstein Litowitz and Kessler Topaz as co-lead counsel, and Louisiana Sheriffs recovered $730 million for investors when it served as co-lead bond plaintiff in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) (Stein, J.), with Bernstein Litowitz as lead counsel and Kessler Topaz as additional counsel. Ex. F ¶¶ 3, 5.

Moreover, as described further in the Joint Declaration, AP7 and Louisiana Sheriffs are ideally suited to lead this litigation given that they have standing to assert claims under both the Exchange Act and the Securities Act arising out of both the IPO and SO—thereby ensuring all possible claims can be asserted against all culpable parties. Such a partnership will provide the

9

class with the broadest possible protection, which is a critical benefit in this case given Luckin Coffee's precarious financial position. Ex. F ¶ 9.

Moreover, AP7 and Louisiana Sheriffs have already taken measures to ensure the claims of the class are vigorously and effectively prosecuted in the best interests of the Class. For example, as part of their effort to formalize their oversight of this action and before seeking appointment as Lead Plaintiff, representatives of AP7 and Louisiana Sheriffs held a conference call in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the action, the benefits that the Class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures the funds have and will take to ensure that the Class's claims will be zealously and efficiently litigated. Ex. F ¶ 11. Among other things, AP7 and Louisiana Sheriffs directed their proposed Lead Counsel to enter into a joint prosecution agreement that outlines their proposed Lead Counsel's respective responsibilities and ensures there will be no duplication of effort and that the claims of the class are prosecuted vigorously yet efficiently and in a cost-effective manner, and which can be provided to the Court *in camera*. Ex. F ¶ 17. Further, while AP7 and Louisiana Sheriffs appreciate that any attorneys' fees in this action, if any, will be set by the Court, they take very seriously their obligation as Lead Plaintiff and have executed retainer agreements that limit the fees counsel may request. *Id*. Through these measures and others, AP7 and Louisiana Sheriffs have sought to ensure the class will receive the best possible representation.

In sum, AP7 and Louisiana Sheriffs have demonstrated their willingness, resources, and experience and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. In other words, AP7 and Louisiana Sheriffs are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff

when enacting the PSLRA. *See, e.g., Voxx Int'l Corp.*, 2015 WL 4393798, at *4 (appointing group of three institutions that "submitted a joint declaration, executed by an executive from each entity, indicating that representatives from each have conferred and agreed to work together in the prosecution of this action"); *Mustafin v. GreenSky, Inc.*, 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (appointing group of three institutions that "pledged to work closely together to vigorously prosecute the claims on behalf of the class"); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group of institutions as Lead Plaintiff that submitted declaration detailing discussions regarding "plans for joint oversight over the litigation and joint supervision of counsel").

B.  **AP7 and Louisiana Sheriffs Selected Well-Qualified Lead Counsel to Represent the Class**

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The Court should approve AP7 and Louisiana Sheriffs' selection here.

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Ex. G (Kessler Topaz's Firm Résumé). The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including in *In re Tyco International, Ltd. Sec. Litig.*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery) and *Luther v. Countrywide Fin. Corp.*, No. 2:12-CV-05125 MRP (MANx) (C.D. Cal.) ($500 million recovery). Further, Kessler Topaz is currently serving as Lead Counsel in some of the most significant securities fraud class actions in the Second Circuit, including *Sjunde AP-Fonden*

11

*v. General Electric Co.*, No. 17-cv-8457 (S.D.N.Y.) (with AP7 serving as Lead Plaintiff), and *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.,* No. 18-cv-12084 (S.D.N.Y.) (with AP7 serving as Lead Plaintiff). Kessler Topaz also obtained a rare jury verdict in investors' favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Sec. Litig.*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).

Similarly, Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Josefson Decl., Ex. H (Bernstein Litowitz's Firm Résumé). Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history and the largest in the Second Circuit—were obtained for the class. Examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include *Plumbers & Pipefitters' Local #562 Supplemental Plan & Trust v. J. P. Morgan Acceptance Corp.*, No. 08-cv-1713 (E.D.N.Y.) (Korman, J.), in which Bernstein Litowitz obtained a $280 million recovery for the Class, representing the largest-ever securities class action recovery in this District. Bernstein Litowitz also achieved $163 million in combined recoveries in *In re Symbol Technologies, Inc. Securities Litigation*, No. 02-cv-1383 (E.D.N.Y.) (Orenstein, J.), and *Louisiana Municipal Police Employees' Retirement System v. Deloitte & Touche LLP*, No. 04-cv-621 (E.D.N.Y.) (Wexler, J.).

Moreover, Kessler Topaz and Bernstein Litowitz have a history of successfully prosecuting securities fraud class actions together—including in cases where AP7 and Louisiana Sheriffs served as co-lead plaintiff with other institutional investors. Kessler Topaz and Bernstein Litowitz's joint prosecutions, which have resulted in recoveries collectively exceeding $4.5 billion

in recent years, include, among others: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel); *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovery with Bernstein Litowitz as lead counsel and Kessler Topaz as additional counsel and Louisiana Sheriffs serving with two other institutions as court-appointed bond plaintiffs); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel with Louisiana Sheriffs as co-lead plaintiff); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel); and *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel). Furthermore, Kessler Topaz and Bernstein Litowitz are currently serving together as co-lead counsel in *In re Kraft Heinz Securities Litigation*, No. 19-cv-01339 (N.D. Ill.) (with AP7 serving as a co-lead plaintiff with another institutional investor).

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

**C.** **The Actions Should Be Consolidated**

AP7 and Louisiana Sheriffs respectfully request that the actions listed below against Luckin Coffee be consolidated pursuant to Rule 42(a). Rule 42(a) permits consolidation where "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). "Under Rule 42(a), the Court has broad discretion to determine whether to consolidate actions, and in making this determination, the Court is to consider whether judicial economy favors

consolidation." *In re Synergy Pharm. Inc. Sec. Litig.*, 2019 WL 6150713, at *3 (E.D.N.Y. Nov. 20, 2019) (internal quotations and brackets omitted).

| Caption | Civil No. | Date Filed |
|---|---|---|
| *Sterckx v. Luckin Coffee Inc.* | 1:20-cv-01677-KAM-VMS | April 2, 2020 |
| *Gopu v. Luckin Coffee Inc.* | 1:20-cv-01747-EK-SJB | April 8, 2020 |

Each of the plaintiffs in the above-captioned actions is an investor in Luckin Coffee and asserts claims concerning the same parties, transactions, and events. The actions present virtually identical factual and legal issues because they each assert claims under Sections 10(b) and 20(a) of the Exchange Act against Luckin Coffee and its senior executives and Section 11 of the Securities Act against Luckin Coffee and its equity offering underwriters, and are premised upon substantially similar alleged misstatements regarding the Company's sales figures and the accuracy of the Company's financial statements.[3] Consolidation would promote the conservation of judicial resources by preventing the substantial duplication of labor that would result if the actions were heard by different judges.

Therefore, AP7 and Louisiana Sheriffs respectfully request that the Court consolidate the above-captioned actions.

## CONCLUSION

For the reasons discussed above, AP7 and Louisiana Sheriffs respectfully requests that the Court: (1) appoint them as Lead Plaintiff; (2) approve their selection of Kessler Topaz and

---

[3] While *Sterckx* and *Gopu* assert slightly different class periods and *Gopu* names two additional defendants, courts have routinely held such minor differences do not outweigh the benefits of judicial economy favoring consolidation. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d. 286, 293 (E.D.N.Y.1998) (consolidating actions despite the fact that one of the four complaints specified a class period which began before and ended during the class period alleged in the other three complaints); *In re Synergy* 2019 WL 6150713, at *3 (consolidating actions where some defendants named in one action were excluded from the other two actions and there were different and overlapping class periods).

Bernstein Litowitz as Lead Counsel for the Class; (3) consolidate the above-captioned actions; and (4) grant any such further relief as the Court may deem just and proper.

Dated: April 13, 2020

Respectfully Submitted,

**BERNSTEIN LITOWITZ BERGER  & GROSSMANN LLP**

*/s/ Gerald H. Silk*
Gerald H. Silk
Avi Josefson
Michael D. Blatchley
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund and Proposed Lead Counsel for the Class*

**KESSLER TOPAZ MELTZER  & CHECK, LLP**

Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff Sjunde AP-Fonden and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I, Gerald H. Silk, hereby certify that on April 13, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF System, which will send notification of such public filing to all counsel registered to receive such notice.

/s/ *Gerald H. Silk*
Gerald H. Silk